**STANDARD AGREEMENT FOR PROFESSIONAL SERVICES**
Water/Wastewater Design and Construction Phase Assignments
Page 1 of 21

Between Saratoga County Water Authority and Malcolm Pirnie, Inc.
Project Number: 6075001

This is an **Agreement** effective as of the prior commencement of Project activities as stated herein ["**Effective Date**"] and executed this 27 day of March 2008, between the Saratoga County Water Authority ["**Client**"], a corporation chartered under the laws of the State of New York, having its principal place of business at 357 Milton Avenue, Ballston Spa, New York 12020, and Malcolm Pirnie, Inc. ["**Malcolm Pirnie**"], a New York corporation having its principal place of business at 104 Corporate Park Drive, White Plains, New York 10602, having an office at 43 British American Boulevard, Latham 12110. As such, this Agreement supplants all prior contracts to the extent said contracts are inconsistent with the terms as stated herein.

The Client intends to construct the Saratoga County Water Treatment and Transmission Facilities ["**Project**"].

Client engages Malcolm Pirnie to provide professional engineering services related to construction of its Project [**Services**].

The location of the Project is Saratoga County [**Site**], New York [**State**].

Malcolm Pirnie's Services for the Project are described generally as follows:

Engineering services related to the construction of the Saratoga County Water Treatment and Transmission Facilities, specifically; construction phase services, bond feasibility report, easement acquisition services, water storage tank, NYSDOT coordination, in accordance with plans approved by the New York State Department of Health by their letter of March 14, 2007, Log # 1775; NYSDEC WSA #10896 Approval of Plans for an intake system, membrane filtration plant, pump station and storage.

In consideration of the mutual promises herein, Client and Malcolm Pirnie agree that the terms and conditions of this Agreement are the following:

## 1   BASIC SERVICES

**1.1**   **Scope.** Malcolm Pirnie shall provide the **Basic Services** described in Schedule A. Malcolm Pirnie's obligations under this Agreement are solely for the benefit of Client and the County of Saratoga and no other party is intended to benefit or have rights hereunder.

**1.2**   **Standard of Care.** Malcolm Pirnie shall perform the professional engineering Services under this Agreement at the level customary for competent and prudent engineers performing such services at the time and place where the services are provided [**Standard of Care**]. These Services will be provided by licensed engineers and other professionals and individuals skilled in other technical disciplines, as appropriate.

**1.3**   **Instruments of Service.** Malcolm Pirnie is responsible for the professional quality, technical accuracy, timely completion, and the coordination of all instruments of its services including designs, drawings, specifications, reports [**Service Instruments**] and other services provided under this Agreement.

**1.4**   **Applicable Codes.** The Service Instruments will conform to the generally accepted codes and regulations applicable to the Project at the time of performance.

**1.5**   **Indemnification.** Malcolm Pirnie agrees to indemnify and hold Client harmless from all losses and damages resulting from Malcolm Pirnie's failure to meet the Standard of Care.

**1.6**   **Contract Documents.** The Service Instruments shall incorporate Malcolm Pirnie's standard construction documents [**Contract Documents/"Plans and Specifications"**]. In any event, Malcolm Pirnie shall be an additional insured on all liability and property damage insurance policies which the construction contractor(s) for the Project [**Contractor**] shall be required to provide. All contracts between Client and Contractor for the Project require Contractor to indemnify and hold Client and Malcolm Pirnie harmless from any and all legal actions and liabilities arising out of the construction of the Project including, but not limited to, injury to or death of any person or injury or destruction of tangible property, not caused by the sole negligence of the party to be indemnified.

**1.7**   **Subcontractors.** Any subcontractors and outside associates or consultants to be engaged by Malcolm Pirnie under this Agreement are limited to those identified in a writing to be submitted within seven (7) days of execution, or as Client specifically approves during the performance of this Agreement.

SCWA-20324



**1.8 Hazardous Wastes.** Client represents that the Project does not contemplate the performance of services, professional or otherwise, related to hazardous or toxic wastes, material, or substances and other pollutants. Malcolm Pirnie shall not be responsible for and, to the fullest extent permitted by law, shall be held harmless from all costs and other liabilities arising from the presence in or about the Project of hazardous or toxic wastes, material or substances and other pollutants, whether or not designated as such by law or regulation.

**1.9 Construction Phase Services.** Malcolm Pirnie shall provide construction phase Services in accordance with Schedule A and act as Client's representative at the Site in accordance with the General Conditions of the Contract Documents as modified by Schedule D.

   1.9.1   In the event the construction phase services are provided by another party not under Malcolm Pirnie's direction, Malcolm Pirnie shall not be responsible for and Client shall indemnify and hold Malcolm Pirnie and Malcolm Pirnie's consultants harmless from all claims, damages, losses and expenses, including attorneys' fees arising out of, or resulting from, any interpretation, clarification, substitution, acceptance, shop drawing or sample approval or modifications of such documentation issued or carried out by Client or others or construction observation carried out by others. Nothing contained in this paragraph shall be construed to release Malcolm Pirnie or Malcolm Pirnie's consultants from liability for failure to perform in accordance with professional standards any duty or responsibility which Malcolm Pirnie has undertaken or assumed under this Agreement.

   1.9.2   **Coordination.** In that client has awarded more than one prime contract for Project construction, Malcolm Pirnie shall coordinate the activities of the various prime contractors. This coordination will not include the supervision, direction or control of contractors means, methods, techniques of construction, or the safety precautions and programs incident thereto.

**2   ADDITIONAL SERVICES**

**2.1 Scope.** Malcolm Pirnie will provide the **Additional Services** described in Schedule B when authorized by Client in writing. There are no exceptions to this rule/requirement.



**3   CLIENT'S RESPONSIBILITIES**

   Unless stated otherwise in Section 8, Client shall do the following in a timely manner:

**3.1 Client's Representative.** William Simcoe, client's Executive Director is hereby designated as representative having authority to give instructions, receive information, define Client's policies, and make decisions with respect to the Project.

**3.2 Project Criteria.** Provide all criteria and information as to Client's requirements for the Project, including design objectives and constraints, space, capacity and performance requirements, and any budgetary limitations. Furnish copies of all design and construction standards which Client will require to be included in the Service Instruments.

**3.3 Data.** Client has provided all available information, including previous reports and any other data in the possession of Client relevant to design or construction of the Project. These data may include (1) data prepared by others, including borings, subsurface explorations, hydrographic surveys, and laboratory tests and inspections of samples, materials and equipment, (2) appropriate professional interpretations of such data, (3) environmental assessments and impact statements, (4) property, boundary, easement, right-of-way, topographic and utility surveys, (5) property descriptions, zoning, deed and other land use restrictions, and (6) other necessary special data or consultations. Malcolm Pirnie may rely on the accuracy and completeness of the supplied data.

**3.4 Surveys.** Client has provided engineering surveys to define construction reference points to enable Contractor to lay out Project construction.

**3.5 Access.** The parties agree that client has arranged for, and will continue to arrange for Malcolm Pirnie to enter upon public and private property as necessary.

**3.6 Review.** Examine the Service Instruments and obtain the advice of attorneys, insurance counselors or other consultants as Client thinks appropriate. Render written decisions concerning the Service Instruments within a reasonable time.

**3.7 Permits.** Use reasonable efforts to furnish approvals and permits from governmental authorities and other entities having jurisdiction over the Project and approvals from others as may be necessary for the timely completion of the Project. Client does not guarantee that all permits/approvals will be obtained.

**3.8 Expert Advice.** Provide legal, accounting, insurance or other necessary advisory services for the Project as needed by Client.



**STANDARD AGREEMENT FOR PROFESSIONAL SERVICES**
Water/Wastewater Design and Construction Phase Assignments
Between Saratoga County Water Authority and Malcolm Pirnie, Inc.

Page 3 of 21

Project Number: 6075001

**3.9** **Site Representative.** If Client designates a person other than Malcolm Pirnie to represent Client at the Site, specify the duties, responsibilities and limitations of authority of such other person and the effect on Malcolm Pirnie's duties and responsibilities in a schedule attached to this Agreement.

**3.10** **Meetings.** Attend the pre-bid conference, bid opening, pre-construction conference, construction progress and other job related meetings, and Substantial Completion and Final Payment inspections.

**3.11** **Project Developments.** The parties shall endeavor to give prompt written notice to each other whenever they observe or otherwise becomes aware of any development that affects the scope or timing of Malcolm Pirnie's services, or any defect or non-conformance in the work of any Contractor.

## 4 PERIODS OF SERVICE

**4.1** **Time of Performance.** Sections 4 and 5 anticipate the orderly and continuous progress of the Services through completion of construction. The time of performance is the period reasonably expected to be required for the design, award of contracts, construction and initial operation of the Project, including necessary Client or regulatory agency review and approval.

**4.2** **Delays.** If Schedule A specifies periods of time for performance of Services or specific dates by which services are to be completed and if such periods or dates are exceeded through no fault of Malcolm Pirnie, the compensation specified under Section 5 shall be subject to equitable adjustment.

**4.3** **Start of Performance.** Client has already authorized Malcolm Pirnie to proceed before signing this Agreement and Malcolm Pirnie has therefore already received payments under this contract. This contract thereby covers all prior work performed by Malcolm Pirnie on the project.

**4.4** **Completion of Performance.** For the purposes of final payment under Section 5, completion of Malcolm Pirnie's Services will occur:

**4.4.1** for a study, investigation or planning activity: upon delivery of the final report as specified in Schedule A or B, as appropriate;

**4.4.2** for a design activity: when the Bid Set of Contract Documents is delivered as specified in Schedule A;

**4.4.3** for a bidding or construction contract negotiation activity: upon issuance by Client of notice of award of the construction contract;

**4.4.4** for a construction activity: when written recommendation of final payment for the last prime construction contract of the Project is issued; and

**4.4.5** for a startup or operations activity: upon the earlier of successful completion of acceptance testing by the Contractor or beneficial occupancy by Client but, in any event, not later than one year after Substantial Completion. Notwithstanding the foregoing, no earlier than successful startup of all systems, approval of Completed Works in accordance with Part 5 of the New York State Sanitary Code.

**4.4.6** No sooner than written notice of completion by Client which shall not be unreasonably withheld.

**4.5** **Force Majeure.** If a force, event, or circumstance (i) beyond Malcolm Pirnie's control and (ii) was not foreseeable, and (iii) is not beyond client's control and interrupts or delays Malcolm Pirnie's performance, the time of performance of the Basic or Additional Services shall be equitably adjusted. Malcolm Pirnie shall provide written notification of such force, event or circumstance upon its knowledge of same.

## 5 COMPENSATION

**5.1** **Basic Services.** Client shall continue to pay Malcolm Pirnie the Amount stated in invoices issued in accordance with Schedule C **[Pricing Schedule]** for work performed and Reimbursable Expenses incurred during the period covered by the invoice. Invoices are due and payable within 30 days after receipt by Client or the next board meeting, whichever is later, (which shall not be later than 45 days). Client's payments shall be in the form and shall be sent to the Malcolm Pirnie address as described in the invoices. Client shall be credited for amounts already paid prior to the execution of this contract.

**5.2** **Additional Services.** Client shall pay Malcolm Pirnie for Additional Services performed pursuant to Client's written authorization and invoiced in accordance with the Pricing Schedule. There shall be no exceptions to this rule/requirement. All such additional services shall be billed immediately and segregated on the invoice.

Version: Nov 2005
C:\Documents and Settings\ccrist\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc

Final Malcolm Pirnie Contract.doc

SCWA-20326



Between Saratoga County Water Authority and Malcolm Pirnie, Inc.                    Project Number: 6075001

**5.3** **Litigation Services.** If Client requires Malcolm Pirnie's services either as a witness in, or in support of, litigation or other dispute resolution procedures between Client and a third party, Malcolm Pirnie will provide such services in accordance with the attached Schedule.

**5.3.1.** **Changes in Compensation.** There shall be no changes in compensation unless agreed upon by the parties in a signed writing.

**5.4** **Delay or Termination.**

**5.4.1** If Client delays the performance of, or payment for, services under this Agreement for more than 3 months for a reason(s) other than Malcolm Pirnie's fault, Malcolm Pirnie may suspend performance until it receives payment in full for services rendered and expenses incurred to the date of suspension.

**5.4.2** If Client terminates this Agreement prior to completion of the Basic Services, Malcolm Pirnie shall be paid for services rendered and expenses incurred to the date of termination.

**5.4.3** **Termination.** Client may terminate this contract should Malcolm Pirnie breach any material provisions as determined by the Saratoga County Water Authority of this agreement. Client can also terminate the contract upon ten (10) days written notice. If client so elects Malcolm Pirnie shall be paid for work completed up to the effective date of termination.

**5.5** **Disputed Amounts.** Notwithstanding the provisions of Section 7, if Client disputes an item(s) or amount(s) contained in an invoice, Client agrees to pay the balance of the undisputed invoiced amounts to Malcolm Pirnie in accordance with Schedule C.

**5.6** **Collection.** Any reasonable attorney's fees or other reasonable costs incurred by Malcolm Pirnie in collection of adjudged delinquent amounts shall be paid by Client, unless there was a non-frivolous and reasonable grounds for client to withhold payment.

**6** **OPINIONS OF CONSTRUCTION COST**

**6.1** **Construction Cost.** The cost of constructing the Project [**Construction Cost**] means the total cost to Client of those portions of the Project designed and specified in the Service Instruments. Construction Cost will not include Malcolm Pirnie's compensation and expenses, the cost of land, rights of way, or compensation for properties unless specified in Schedule A. Construction Cost will also not include Client's legal, accounting, or insurance counseling services, or interest and financing charges incurred in connection with the Project, or the cost of services to be provided by others under paragraphs 3.6 and 3.8 unless otherwise specified in Schedule A.

**6.2** **Opinions of Cost.** Malcolm Pirnie has no control over the cost of labor, materials, equipment or services furnished by others, or over the Contractor's methods of determining prices, or over competitive bidding or market conditions. Malcolm Pirnie's opinion of probable Construction Cost is made on the basis of Malcolm Pirnie's experience and qualifications and represents Malcolm Pirnie's judgment as an experienced and qualified professional engineering firm, familiar with the construction industry. Malcolm Pirnie does not guarantee that proposals, bids or actual Project cost will not vary from Malcolm Pirnie's opinions of probable Construction Cost.

**7** **GENERAL CONSIDERATIONS**

**7.1** **Changes.** By written notice at any time, Client may change the Basic Services, provided such changes are within the general scope of the services contemplated by this Agreement. In such event, an equitable adjustment both in the compensation for and time of performance of the Agreement shall be made in writing prior to Malcolm Pirnie's performing the changed services.

**7.2** **Confidentiality.** Malcolm Pirnie will hold secret and confidential all information designated by Client as confidential [**Confidential Information**]. Malcolm Pirnie will not reveal Confidential Information to a third party unless:

**7.2.1** Client consents in writing;

**7.2.2** the information is or becomes part of the public domain;

**7.2.3** Malcolm Pirnie lawfully possessed the information before receipt from Client;

**7.2.4** applicable law, regulation, court order or an agency of competent jurisdiction requires its disclosure; or

**7.2.5** failure to disclose the information would pose an imminent and substantial threat to human health or the environment.

**7.3** **Professional Service.** The Service Instruments furnished under this Agreement are the tangible results of Malcolm Pirnie's Services for the Project and Malcolm Pirnie shall have the right to use or reuse and retain the copyright of such Service Instruments for its purposes, at its sole risk and without liability to Client. Client may retain copies in connection with the use or occupancy of the Project and shall retain ultimate ownership.

**7.3.1** **Reuse.** Malcolm Pirnie does not represent the Service Instruments to be suitable for reuse by Client or others for extensions of the Project or on any other project. Any reuse without written verification or adaptation by Malcolm Pirnie for the specific purpose intended is at Client's sole risk, without liability to Malcolm Pirnie. Any such verification or adaptation will entitle Malcolm Pirnie to compensation at rates to be agreed on by Client and Malcolm Pirnie.

Version: Nov 2005
C:\Documents and Settings\ccrist\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc                Final Malcolm Pirnie Contract.doc

SCWA-20327

**STANDARD AGREEMENT FOR PROFESSIONAL SERVICES**
Water/Wastewater Design and Construction Phase Assignments
Between Saratoga County Water Authority and Malcolm Pirnie, Inc.

Page 5 of 21

Project Number: 6075001

7.3.2 **CADD.** Malcolm Pirnie may provide information related to the Service Instruments in computer-assisted design and drafting format **[CADD]** to Client. CADD is derived in part from computer software for which Malcolm Pirnie is licensed. These licenses are not transferable. Any unlicensed reuse of CADD may subject the user to liabilities to the software licensor.

7.3.3 **Electronic Media.** Either party to this Agreement may rely on the data or information set forth on paper (also known as "hard copies") that the party receives from the sending party by mail, hand delivery, or facsimile. If there is a discrepancy between the data received in electronic media format and the hard copies, the hard copies govern. Any conclusion or information obtained or derived from the data in electronic media format shall be at the user's sole risk. When transferring documents in electronic media format, the sending party makes no representations as to the long term compatibility, usability, or readability of such documents resulting from the use of software, application packages, operating systems or computer hardware differing from those used by the document's creator.

7.4 **Insurance.** Malcolm Pirnie will maintain insurance against the following risks during the term of the Agreement:

7.4.1 workers compensation in statutory amounts and employer's liability for Malcolm Pirnie's employees' Project-related injuries or disease;

7.4.2 general liability and automobile liability each in the amount of $2,000,000 for personal injury or property damage to third parties, with a $5,000,000.00 umbrella with the Saratoga County Water Authority named as additional insured which arises from Malcolm Pirnie's performance under this Agreement; and

7.4.3 professional liability in the amount of $5,000,000 for legal obligations arising out of Malcolm Pirnie's failure to meet the Standard of Care.

7.5 **Interpretation.** This Agreement shall be interpreted in accordance with the laws of the State.

7.6 **Successors.** This Agreement is binding on the successors and assigns of Client and Malcolm Pirnie. The Agreement may not be assigned in whole or in part to any third parties without the written consent of both Client and Malcolm Pirnie.

7.7 **Independent Contractor.** Malcolm Pirnie represents that it is an independent contractor and is not an employee of Client.

7.8 **Disputes.** If a dispute or complaint **[Dispute]** arises concerning this Agreement, Client and Malcolm Pirnie will negotiate a resolution of the Dispute. Should negotiation be unsuccessful, mediation of the Dispute by a third party shall follow. Any time which elapses in attempting to resolve the Dispute through either or both negotiation or mediation shall extend day-for-day any applicable statute(s) of repose or limitation of actions.

7.8.1 **Negotiation.** Following written notice of a Dispute, a minimum of three face-to-face meetings (or less if the Dispute is resolved) shall be held.

7.8.2 **Mediation.** If negotiation is unsuccessful, a mutually acceptable third party **[Facilitator]** having expertise in the subject of the Dispute shall be engaged to mediate the Dispute. The fee and expenses of the Facilitator shall be shared equally by the parties to the Dispute. The parties may present evidence and arguments to the Facilitator. Unless the Facilitator and the parties agree otherwise, a minimum of three face-to-face meetings shall be held within the sixty day period beginning on the date of the Facilitator's engagement.

7.8.2.1 Following the third meeting, or earlier if appropriate, the Facilitator shall report to the parties whether he believes the Dispute is resolvable through mediation. At that point the parties shall elect (a) to continue mediation, (b) replace the Facilitator and continue mediation, or (c) end mediation. If the mediation is ended, or the parties having completed the aforesaid and are unable to agree on a course of action, the parties may adjudicate the Dispute.

7.8.3 **Adjudication.** The laws of the State of New York shall control both the action and the substantive issues unless required by law to be filed in a federal district court. Subject to the foregoing, all disputes shall be litigated. The forum for all litigation shall be Saratoga County Supreme Court.

7.9 **Notices.** Written notices may be delivered in person or by certified mail, by facsimile, or by courier. All notices shall be effective upon the date of receipt by the party. Notices shall be delivered or sent to the designated representative of the other party at the address given on the last page of this Agreement. An address may only be changed by written notice.

7.10 **Applicable Law.** If applicable to this Agreement, Malcolm Pirnie will comply with the requirements of:

7.10.1 the Equal Employment Opportunity clause in Section 202 of Executive Order 11246, as amended,

7.10.2 Utilization of Small and Disadvantaged Business Concerns (Public Law 95-507), and

7.10.3 all other federal, state and local laws and regulations or orders issued under such laws. See Schedule F.

**7.11** **Entire Agreement.** This Agreement, including any schedules, attachments and referenced documents, in connection with all other agreements previously executed by the parties, is the entire agreement between Client and Malcolm Pirnie. Any prior or contemporaneous agreements, promises, negotiations or representations inconsistent with the terms herewith shall be null and void. Moreover, there remains no payment obligations outstanding by the County or Authority under any of said prior agreements. Any changes to this Agreement shall be in writing and signed by Client and Malcolm Pirnie.

**7.12** **Waivers and Severability.** A waiver or breach of any term, condition, or covenant by a party shall not constitute a waiver or breach of any other term, condition or covenant. If any court of competent jurisdiction declares a provision of this Agreement invalid, illegal, or otherwise unenforceable, the remaining provisions of the Agreement shall remain in full force and effect.

**7.13** **Effective Date.** Unless stated otherwise in Schedule A, this Agreement is effective as of the date that Malcolm Pirnie first began performing work for the Authority, reflecting the fact that work has begun prior to the actual execution of the contract.

**7.14** **Inspections.** [Attached]. **File Records.** [Attached].

**8** **SECTION 8 – SPECIAL PROVISIONS, EXHIBITS and SCHEDULES**

**8.1** **Special Provisions.** This Agreement is subject to the following special provisions:

    8.1.1 (None)

**8.2** **Schedules.** The following **Schedules** are attached to and made a part of this Agreement:

    8.2.1 **Schedule A** "Scope of Basic Engineering Services and Related Matters"

    8.2.2 **Schedule B** "Additional or Optional Engineering Services"

    8.2.3 **Schedule C** "Pricing Schedule"

    8.2.4 **Schedule D** " Construction Phase Services"

    8.2.5 **Schedule E** "Additional Design Changes"

    8.2.6 **Schedule F** "Equal Opportunity Employment"

**Execution Authority.** This Agreement is a valid and authorized undertaking of Client and Malcolm Pirnie. The representatives of Client and Malcolm Pirnie who have signed below have been authorized to do so.

IN WITNESS WHEREOF, the parties hereto have made and executed this Agreement as of the day and year shown on the cover page.

**SARATOGA COUNTY WATER AUTHORITY**

By _John E Fawler_

Title _Chairman_

Witness _Greg M R_

Date Signed: _3/24/08_

Address for Giving Notices:

357 Milton Avenue, Box 19
Ballston Spa, New York 12020

**MALCOLM PIRNIE, INC.**

By _Daniel Levenson_

Title _Vice President_

Witness _Paul Herald_

Date Signed: _3/24/08_

Address for Giving Notices:

104 Corporate Park Drive
White Plains, New York 10602
Attn: Legal Department

Version: Nov 2005
C:\Documents and Settings\ccris\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc

Final Malcolm Pirnie Contract.doc

**SCWA-20329**



## Schedule A
## Scope of Basic Engineering Services and Related Matters

A.1     The scope of Basic Services[1] consists of the following and made part of this Agreement:

**1.  BASIC SERVICES**

1.1.   **General.** Malcolm Pirnie shall provide for Client professional engineering services in all phases of the Assignment to which this Agreement applies as hereinafter provided. These services will include serving as Client's professional engineering representative for the Assignment, providing professional engineering consultation and advice and furnishing customary civil, structural, mechanical and electrical engineering services and customary architectural services incidental thereto.

1.2.   **Duration.** Malcolm Pirnie will provide for the Client professional engineering services as described herein   Construction Administration will be complete upon Malcolm Pirnie's review and recommendation of payment of all final applications for payment by the Contractor(s).

1.3.   **Project and Assignment Description.** The Basic Services are premised on the following understanding of the general scope of the Project and of the Assignment:

1.4.   **Construction Phase Services.** After the Client issues Notice of Award(s) to the Contractor(s), Malcolm Pirnie shall:

1.4.1.   Assist Client with Construction Phase Services as described in Schedule D of this Agreement.

1.4.2.   Construction Administration Phase Services will be included as follows:

1.4.2.1.   Pre-construction Conference:  Malcolm Pirnie has attended one single pre-construction conference for the Contract(s).

1.4.2.2.   Applications for Payment:  Malcolm Pirnie review and make a recommendation of payment to the Client (or take appropriate action) for a combined total of All Contractors' applications for payment in accordance with the Contract(s).

1.4.2.3.   Construction Progress Meetings:  Malcolm Pirnie will schedule and attend all necessary progress meetings every two weeks, to at least be held for the duration of the contract at the water treatment plant site.  The progress meeting will encompass all active Contract(s) and Contractor(s) working on the assignment.

1.4.2.4.   Change Orders:  Malcolm Pirnie will prepare all necessary change orders.

1.4.2.5.   Record Drawings:  Malcolm Pirnie will review the record drawings submitted by the Contractor(s) and develop a Record Set of Drawings.  Malcolm Pirnie will submit to the Client one reproducible set of Record Drawings and one electronic set (.pdf file format) of Record Drawings.

1.4.2.6.   Operation and Maintenance (O&M) Data:  Malcolm Pirnie will review and approve (or take appropriate actions) the O&M and warranty data as prepared and submitted by the Contractor(s).  Upon approval of the O&M data and warranty information, Malcolm Pirnie will provide the Client with up to four copies of material in three ring binders.

1.4.2.7.   O&M Training:  Malcolm Pirnie will review and approve (or take appropriate actions) the O&M training instruction course outline and coordinate training with the Client and the Contractor(s).

1.4.3.   Construction Inspection Phase Services will be included as follows:

1.4.3.1.   Malcolm Pirnie will monitor the Contractor's(s') construction activities for Contracts 2G, 2E, 2H, 2P, 3, 4, 5, 6, 7 and 8 through a full time Resident Project Representative (Resident).

1.4.3.2.   In addition to the Resident, Malcolm Pirnie will monitor the Contractor's(s') construction activities for Contracts 2G, 2E, 2H and 2P through two full time Field Representatives that will be provided throughout the duration of the assignment.

---

[1] Construction phase services under this Agreement shall be performed in accordance with Schedule D insofar as applicable and appropriate and compensated as part of Schedule C's lump sum.

Version: Nov 2005
C:\Documents and Settings\ccrist\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc

Final Malcolm Pirnie Contract.doc

**SCWA-20330**

**STANDARD AGREEMENT FOR PROFESSIONAL SERVICES**                                    Page 8 of 21
Water/Wastewater Design and Construction Phase Assignments

Between Saratoga County Water Authority and Malcolm Pirnie, Inc.                    Project Number: 6075001



1.4.3.3.   In addition to the Resident, Malcolm Pirnie will monitor the Contractor's(s') construction activities for Contracts 3,4,5,6,7, and 8 through five full time Field Representatives throughout the duration of the assignment.

1.4.3.4.   Testing services not provided by the Contractor(s) will be provided by the Client. The Resident will coordinate testing activities for the Client.

**1.5    Bond Feasibility Report**

1.5.1    We will prepare a bond feasibility report for the Authority which will include the following sections:

- Introduction

- Organization and management

- Description of the service area

- Description of the water distribution and treatment system

- Operational conditions and regulatory compliance

- Existing and projected system demands

- Description of the facilities and anticipated project costs

- Review of proposed and/or adopted water rates and charges

- Financial review and cash flow analysis, including the preparation of a cash flow forecast showing five years of forecasted cash flows and anticipated debt service coverage ratios.

- Conclusions

The conclusions of the report will consist of statements related to the anticipated ability to meet the bond covenants (i.e. coverage and reserve requirements). It is anticipated that conclusions will be based on information provided by the Authority during the course of the project, including a variety of technical information, and cost and revenue data. We will rely on this data in the formulation of the findings and conclusions, as well as in the preparation of the bond feasibility report.

1.5.2    In developing this, Malcolm Pirnie has already worked with the Authority and the Authority financial advisor(s) who have already provided debt service schedules and pertinent engineering and financial information.

1.5.3    Five (5) copies of the draft bond feasibility report will be prepared and provided to the Authority.

1.5.4    We will participate in meetings with the Authority and its financial advisor(s) to discuss and review the draft bond feasibility report.

1.5.5    Comments to the draft report will be incorporated into the final report. Five (5) copies of the final bond feasibility report will be provided to the Authority within two weeks of the receipt of all comments to the draft report.

**1.6    Easement Acquisition Services**

1.6.1    We will coordinate work associated with acquiring all necessary easements for the Project. This includes attending meetings, coordination with regulators or other state agencies, meeting directly with landowners, attending hearings and also working with counsel to complete the eminent domain procedure.

1.6.2    We will prepare easements descriptions and mapping including private and public agencies, including contacting and coordinating with these agencies. Map descriptions and pipeline routing will be revised as necessary to secure the easement. It should noted that easements form the SCSD are complicated because the County never filed the appropriate maps when easements were obtained for the SCSD

1.6.3.   Revisions to plans and profiles sheets for any realignment necessary to secure permits, permission or easements are also included. Transmission main routing will be modified to meet the terms and conditions required.

**1.7    Water Storage Tank , SCADA system  and GAC**

1.7.1    Water Storage Tank

1.7.1.1  The water storage tank design drawings will be revised to show modifications to the piping necessary to connect to the proposed incoming transmission main. We will coordinate with the Creighton Manning for the access road infrastructure project and with the Town of Stillwater to obtain site plan approval if required. The tank will also be modified to include a chlorination facility

SCWA-20331



which will consist of a sodium hypochlorite feed system housed in a pre-engineered above ground structure. The work will be designed and bid as one contract unless otherwise directed by SCWA.

1.7.1.2   The contract specifications will be revised to reflect the owner as the Saratoga County Water Authority.

1.7.1.3   Bidding. Up to 15 copies of the tank plans and specification will be made available for the bidding process. The SCWA will advertise the project. Malcolm Pirnie will attend a prebid meeting and answer questions regarding the tank design, if necessary, an addendum will be issued. We will attend the bid opening and review the bids and make a recommendation of award if the project is awarded no later than by May 15, 2008. It is anticipated contract 8 shall be bid by May 15, 2008.

1.7.1.4   Construction administration and oversight of the tank are included under task 1.4.

1.7.2   The Supervisory Control and Data Acquisition system (SCADA) will be modified by RFCOP under Contract 2G to incorporate remote radio telemetry. The intent of such a system would be to evaluate and inner connect signals from 12 locations consisting of: the WTP site as the master receiving site; the 5 MG tank site (level and pressure), two air release valve locations (pressure); and the balance being proposed customer connections (flow and pressure) along the transmission main. To complete the work a GPS based radio path survey will be conducted at the proposed locations. Assuming line-of-sight technology is feasible based on the radio path survey, modifications will be designed to the control panels at the water treatment plant site to integrate the additional signals. Self supporting antennas will be added at the treatment plant and tank site (if necessary) Antennas will be provided at each other location as necessary to clear surrounding trees and/or obstructions. Power will be added at tank location and WTP site to power the RTU equipment. Solar based units are assumed at the balance of the sites to eliminate the need for power.

1.7.2.2   Once the design is completed and approved by SCWA then a RFCOP will be sent to the Contract 2 Contractor for pricing. If acceptable to the SCWA a Change Order will be issued and the equipment will be installed. We will review the shop drawings, and documentation necessary for installation of the equipment.

1.7.3   GAC

1.7.3.1   The SCWA would like to address the possibility of an initial start-up water quality issue when demand could be less then 3 mgd. A memo will be prepared defining contingency actions required to add GAC to treat 1.0 to 3 mgd. The memo will evaluate what piping and power improvements or changes that may need to be made to the current design to accommodate units either as rental package units or as temporary installations within the membrane building.

**1.8   NYSDOT Coordination**

1.8.1   The Round Lake bypass is a project that may ultimately connect to the SCWA project. Once constructed, the transmission would be turned over to the SCWA. On behalf of the SCWA our sub-consultant, CT Male will aid in the design of the specific portion of the transmission main and all issues related to the waterline which will be constructed on the bridge. In addition, we will review the proposed construction of the buried component of the transmission main which is located in the approach to and from the bridge. Comments will be provided regarding the suitability of the design buried portion of the transmission main. We will also convert the metric units into English units so that the SCWA will have a complete record of information.

Version: Nov 2005
C:\Documents and Settings\ccrist\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc

Final Malcolm Pirnie Contract.doc

Between Saratoga County Water Authority and Malcolm Pirnie, Inc.

## Schedule B
### Additional or Optional Engineering Services

B.1    The Scope of Additional Services consists the following and made part of this Agreement:

1.1.    **Operational Phase Services.** During the Operational Phase, Malcolm Pirnie shall, when and only if requested by Client and only if in writing, which shall not be waived under any circumstance and which signed writing shall remain a pre-condition for payment:

1.1.1.    Provide assistance in the closing of any financial or related transaction for the Assignment.

1.1.2.    Provide assistance in connection with the refining and adjusting of any equipment or system.

1.1.3.    Assist Client in training Client's staff to operate and maintain the Assignment.

1.1.4.    Assist Client in developing systems and procedure for control of the operation and maintenance of and record keeping for the Project.

1.1.5.    In addition to the preceding duties and responsibilities, Malcolm Pirnie will perform the following services during the Operational Phase. These duties and responsibilities may be amended and supplemented as necessary as provided by the Agreement.

1.1.5.1.    Prepare a written Operations and Maintenance (O&M) Manual for the Water Treatment Plant and Transmission Facilities.

1.1.5.2.    Provide an Operational Specialist for Startup Services.

Version: Nov 2005
C:\Documents and Settings\ccrisl\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc

Final Malcolm Pirnie Contract.doc

**SCWA-20333**

## Schedule C
## Pricing Schedule

C.1     The Pricing Schedule consists of the following and made part of this Agreement:

## C.2   Terms of Payment

C.2.1    **Lump Sum.** For Basic Services under Schedule A, Section 1, except for Section 1.4.3, Client shall pay Malcolm Pirnie a Lump Sum for the following tasks:

| Task | Estimated Labor Hours | | | | | | | Total Task Cost |
|------|---------|---------|--------------------|----------|------------|------------------|----------------|------|
| | Officer | Manager | Sr. Project Engineer | Engineer | Technician | Admin/ Clerical | Total Hours | |
| Task 1.4 Basic Services/ Construction Phase Services | 500 | 900 | 5300 | 3000 | 2000 | 500 | 12200 | $1,287,000.00 |
| Task 1.5 Bond Feasibility Report | 30 | 100 | 20 | 0 | 10 | 10 | 170 | $ 26,000 |
| Task 1.6 Easement Acquisition Services | 40 | 150 | 70 | 200 | 150 | 100 | 710 | $ 75,000 |
| Task 1.7 Tank SCADA GAC | 40 | 80 | 160 | 120 | 100 | 20 | 500 | $ 60,000 |
| Task 1.8 NYSDOT Coordination | 4 | 90 | 0 | 70 | 40 | 6 | 210 | $ 25,000 |
| | | | | | | | | |
| **Subtotal Hours/Cost** | | | | | | | | $1,473,000.00 |

Version: Nov 2005
C:\Documents and Settings\ccrist\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc

Final Malcolm Pirnie Contract.doc

SCWA-20334



C.2.1 **Fixed Rates.** For Basic Services under Section 1, Client shall pay Malcolm Pirnie on the basis of the following hourly rates for technical work actually performed under Schedule A, Section 1.4.3.

| Task | Rate | Budgeted Duration |
|---|---|---|
| Field Representatives 2007 | $61.00/hour | Five Field Representatives for 15 months and |
| 2008 | $64.00/hour | Two Field Representatives for 30 months |
| 2009 | $67.00/hour | |
| Resident Project Representative | | |
| 2007 | $97.00/hour | One Resident Project Representative for 30 |
| 2008 | $101.00/hour | months |
| 2009 | $106.00/hour | |

The following is an estimate for field representatives during the construction of the project. The estimates are highly influenced by the progress of the contractor, schedules, and weather, etc. Estimated hours for field and resident project representative are as follows:

| | Actual2/Estimated Hours | Rate | Total |
|---|---|---|---|
| 2007 Resident Project Representative (Actual) | 1,199 | $97 | 116,109.00 |
| 2007 Field Representatives (Actual) | 4,382 | $61 | 267,302.00 |
| 2008 Resident Project Representative | 2,400 | $101 | 242,400 |
| 2008 Field Representatives | 11,000 | $64 | 704,000 |
| 2009 Resident Project Representative | 1,400 | $106 | 148,400 |
| 2009 Field Representatives | 4,500 | $67 | 301,500 |

**These estimated amounts have not, and are not, to be exceeded without written authorization from the Client's Board. There shall be not exception to this requirement and it shall therefore be strictly construed.**

For Optional Services or Services requested by the Client that are not included under the Basic Services, client shall pay Malcolm Pirnie for technical work actually performed in accordance with the Summary of Charges, attached to, and made part of this agreement.

C.2.2 If Construction Administration 1.4.3 services extend less than 30 months then a credit of $1,125 per month will be provided. Similarly, if the Construction Administration services extend beyond 30 months the $1,125 per month will be added for a maximum of three months. If it subsequently becomes apparent to Malcolm Pirnie that a compensation amount thus estimated will be exceeded, Malcolm Pirnie shall give client written notice thereof. Promptly thereafter Malcolm Pirnie and client shall review the matter of services remaining to be performed and compensation for such services. Client shall either agree to such compensation exceeding said estimated amount or client and Malcolm Pirnie shall agree to a reduction in the remaining services to be rendered by Malcolm Pirnie, so that total compensation for such services will not exceed said estimated amount when such services are completed. Moreover, all overture for the Field Engineer and Inspector must be authorized and justified by the Saratoga County Water Authority's Executive Directors.

C.3 **Invoices.** Malcolm Pirnie will submit invoices to Client for each month during which services were performed. Invoices may include carrying charges at 1.5% per month for delinquent payments outstanding over 30 days after December 1, 2007, and applicable sales or value-added taxes.

---

2  2007 only.

Version: Nov 2005
C:\Documents and Settings\ccrist\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc

Final Malcolm Pirnie Contract.doc

**SCWA-20335**

C.4    **Total Amount of Contract. The total amount of this Contract is therefore $3,252,711.00. This amount is not to be exceeded without written authorization from Client's Board. There shall be no exceptions to this requirement and it shall therefore be strictly construed.**

Version: Nov 2005
C:\Documents and Settings\ccrist\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc

Final Malcolm Pirnie Contract.doc

SCWA-20336



# Schedule D
## Construction Phase Services

### D.1 CONSTRUCTION PHASE SERVICES

Note: For purposes of this Schedule, the expressions Contract Documents, Shop Drawing, and Change Order shall have the meanings given in the Construction Contract between Client and the Contractor.

1. **General Administration of Construction Contract.** Malcolm Pirnie shall consult with and advise Client and act as Client's representative as provided in this Agreement. All of Client's instructions to Contractor, unless otherwise deemed unnecessary by Client, will be issued through Malcolm Pirnie who will have authority to act on behalf of Client to the extent provided in this Agreement.

2. **Visits to Site and Observation of Construction.** In connection with observations of the work of Contractor while it is in progress:

2.1 Malcolm Pirnie shall make visits to the site at intervals appropriate to the various stages of construction as necessary to observe, as an experienced and qualified design professional, the progress and quality of the Contractor's work (Work). In addition, Malcolm Pirnie shall provide the services of a Resident Project Representative (Resident) at the site to provide more extensive inspection of the Work. Based on information obtained during such visits and on its inspections, Malcolm Pirnie shall endeavor to determine whether the Work is proceeding in accordance with the intent of the Contract Documents. Malcolm Pirnie shall keep Client informed of the progress of the Work.

2.2 The Resident will be Malcolm Pirnie's agent or employee and under Malcolm Pirnie's supervision. The duties and responsibilities of the Resident are set forth in Article D.2, "Duties, Responsibilities and Limitation of Authority of Resident Project Representative," below.

2.3 The purpose of Malcolm Pirnie's visits to and representation by the Resident at the site will be to provide for Client a greater degree of confidence that the completed Work will conform generally to the Contract Documents and that the integrity of the design concept as reflected in the Contract Documents has been implemented and preserved by Contractor.

2.4 Malcolm Pirnie shall not, during such visits or as a result of observations or inspections of the Work in progress, supervise, direct or have control over the Work nor shall Malcolm Pirnie have authority over or responsibility for the means, methods, techniques, sequences or procedures of construction selected by Contractor, for safety precautions and programs incident to the work of Contractor or for any failure of Contractor to comply with laws , rules, regulations, ordinances, codes or orders applicable to Contractor furnishing and performing the Work. Malcolm Pirnie can neither guarantee the performance of the Work by the Contractor nor assume responsibility for Contractor's failure to furnish and perform the Work in accordance with the Contract Documents.

3. **Defective Work.** During its visits, Malcolm Pirnie shall disapprove of or reject the Work while it is in progress if Malcolm Pirnie believes that the Work will not produce a completed Project that conforms generally to the Contract Documents or that it will prejudice the integrity of the design concept of the Project as reflected in the Contract Documents.

4. **Interpretations and Clarifications.** Malcolm Pirnie shall issue necessary interpretations and clarifications of the Contract Documents and in connection therewith prepare Change Orders for execution by Client, if appropriate.

5. **Shop Drawings.** Malcolm Pirnie shall review and approve (or take other appropriate action) Shop Drawings, samples and other data which Contractor is required to submit. Such reviews shall be for conformance with the design concept of the Project as a functioning whole and compliance with the information given in the Contract Documents. Any approvals or other actions associated with the reviews shall not extend to means, methods, techniques, sequences or procedures of construction or to safety precautions and programs incident thereto.

6. **Substitutes.** Malcolm Pirnie shall evaluate and determine the acceptability of substitute or 'equivalent' materials and equipment proposed by Contractor, but in no event shall accept not commercially reasonable materials or equipment.

7. **Inspections and Tests.** Malcolm Pirnie shall have authority, as Client's representative, to require special inspection or testing of the work, and shall review all certificates of inspections, testings and approvals required by law or the Contract Documents to determine that both the content of the certificates and the certified inspection or test results comply substantially with such requirements.

8. **Disputes between Client and Contractor.** Malcolm Pirnie shall act as the initial interpreter of the requirements of the Contract Documents and judge of the acceptability of the work thereunder and make decisions on all claims of Client or Contractor relating to the acceptability of the Work or the interpretation of the requirements of the Contract Documents.

Version: Nov 2005
C:\Documents and Settings\ccrist\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc

Final Malcolm Pirnie Contract.doc

**SCWA-20337**

**STANDARD AGREEMENT FOR PROFESSIONAL SERVICES**                           Page 15 of 21
Water/Wastewater Design and Construction Phase Assignments

Between Saratoga County Water Authority and Malcolm Pirnie, Inc.          Project Number: 6075001

9. **Applications for Payment**. Based on Malcolm Pirnie's on-site observations, on information provided by the Resident, and on review of applications for payment and the accompanying data and schedules, Malcolm Pirnie shall:

9.1      Recommend in writing payments to Contractor. Such recommendations of payment will constitute a representation to Client that the Work has progressed to the point indicated and that, to the best of Malcolm Pirnie's knowledge, information and belief, the quality of the Work is generally in accordance with the Contract Documents  and all applicable code requirements, subject to an evaluation of the Work as a functioning whole prior to or upon Substantial Completion, to the results of any subsequent tests called for in the Contract Documents and to any other qualifications stated in the recommendations.

9.2      In the case of unit price Work, include final determinations of quantities and classifications of the Work in the recommendations of payment, subject to any subsequent adjustments allowed by the Contract Documents.

9.3      By recommending any payment Malcolm Pirnie will not thereby be deemed to have represented that exhaustive, continuous or detailed reviews or examinations beyond the responsibilities specifically assigned to Malcolm Pirnie in this Agreement and the Contract Documents have been made by Malcolm Pirnie to check the quality or quantity of the Work as it is furnished and performed.

10. **Contractor's Completion Documents.** Malcolm Pirnie shall receive and review maintenance and operating instructions, schedules, guarantees, bonds and certificates of inspection, tests, approvals, and record documents which are to be assembled by Contractor in accordance with the Contract Documents. Such review is limited to determining that their content complies with the requirements of the Contract Documents Malcolm Pirnie shall transmit the documents to Client with written comments.

11. **Inspections**. Malcolm Pirnie shall conduct an inspection to determine if the work is substantially complete and a final inspection to determine if the completed Work is acceptable so that Malcolm Pirnie may recommend, in writing, final payment to Contractor. Malcolm Pirnie may give written notice to Client and the Contractor that the Work is acceptable (subject to any conditions therein expressed), but any such recommendation and notice will be subject to the limitations expressed in paragraph 9.3.

12. **Limitation of Responsibilities**. Malcolm Pirnie shall not be responsible for the acts or omissions of the Contractor, or of any subcontractor or supplier, or any of the Contractor's or subcontractor's or supplier's agents or employees or any other persons (except Malcolm Pirnie's own employees and agents) at the site or otherwise furnishing or performing any of the Work. However, nothing contained in paragraphs 1 thru 11, shall be construed to release Malcolm Pirnie from liability for failure to properly perform the duties and responsibilities assumed by Malcolm Pirnie in the Contract Documents.

### D.2     DUTIES, RESPONSIBILITIES AND LIMITATIONS OF AUTHORITY OF RESIDENT PROJECT REPRESENTATIVE

The duties and responsibilities of the Resident Project Representative (Resident) are limited to those of Malcolm Pirnie in Schedules A and B and are further described as follows:

1. **General**. The Resident is Malcolm Pirnie's agent at the site, will act as directed by and under the supervision of Malcolm Pirnie, and will confer with Malcolm Pirnie regarding Resident's actions. Resident's dealings in matters pertaining to the on-site Work shall in general be with Malcolm Pirnie and Contractor, but keeping Client advised as appropriate. Resident's dealings with subcontractors shall only be through or with the full knowledge and approval of Contractor. Resident shall generally communicate with Client with the knowledge of and under the direction of Malcolm Pirnie.

2. **Duties and Responsibilities.** The Resident shall:

2.1      *Schedules*: Review the progress schedule, schedule of Shop Drawing submittals and schedule of values prepared by Contractor and consult with Malcolm Pirnie concerning acceptability.

2.2      *Conferences and Meetings*: Attend meetings with Contractor, such as preconstruction conferences, progress meetings, job conferences and other project-related meetings, and prepare and circulate copies of minutes thereof.

2.3      *Liaison*:

2.3.1    Serve as Malcolm Pirnie's liaison with Contractor, working principally through Contractor's superintendent and assist in explaining the intent of the Contract Documents as necessary.

2.3.2    Assist Malcolm Pirnie in serving as Client's liaison with Contractor when Contractor's operations affect Client's on-site operations.

2.3.2    Assist in obtaining from Client additional details or information, when required for proper execution of the Work.

2.4      *Shop Drawings and Samples*:

**SCWA-20338**

Between Saratoga County Water Authority and Malcolm Pirnie, Inc.                                                    Project Number: 6075001

2.4.1    Record date of receipt of Shop Drawings and samples.

2.4.2    Receive samples which are furnished at the site by Contractor and notify Malcolm Pirnie of availability of samples for examination.

2.4.3    Advise Malcolm Pirnie and Contractor of the commencement of any Work requiring a Shop Drawing or sample if the submittal has not yet been received and approved by Malcolm Pirnie.

2.5      *Review of Work, Rejection of Defective Work, Inspections and Tests*:

2.5.1    Conduct on-site inspections of Work in progress to determine whether the Work is proceeding in general compliance with the Contract Documents.

2.5.2    Report to Malcolm Pirnie whenever Resident believes that any Work is unsatisfactory, faulty or defective, or does not conform to the Contract Documents, has been damaged, or does not meet the requirements of any inspection, test or approval required to be made. Advise Malcolm Pirnie of Work that Resident believes should be corrected or rejected, should be uncovered for inspection, or requires special testing, inspection or approval.

2.5.3    Verify that tests, equipment and systems startups, and operating and maintenance training are conducted in the presence of appropriate personnel, and that Contractor maintains adequate records thereof. Observe, record and report to Malcolm Pirnie appropriate details relative to the test procedures and startups.

2.5.4    Accompany visiting inspectors representing public or other agencies having jurisdiction over the Project, record the results of these inspections and report to Malcolm Pirnie.

2.6      *Interpretation of Contract Documents*: Report to Malcolm Pirnie when clarifications and interpretations of the Contract Documents are needed. Transmit to Contractor clarifications and interpretations issued by Malcolm Pirnie.

2.7      *Modifications*. Consider and evaluate Contractor's suggested changes to Drawings or Specifications and report to Malcolm Pirnie with Resident's recommendations. Transmit Malcolm Pirnie's decisions to Contractor.

2.8      *Records*:

2.8.1    Maintain at the job site orderly files for correspondence, reports of job conferences, Shop Drawings and samples, reproductions of original Contract Documents including all Addenda, Change Orders, Field Orders, additional Drawings issued subsequent to the execution of the Construction Contract, Malcolm Pirnie's clarifications and interpretations of the Contract Documents, progress reports, and

2.8.2    Keep a diary or log book, recording Contractor hours on the job site, weather conditions, data relative to questions concerning Change Orders or changed conditions, list of job site visitors, daily activities, decisions, general observations, and specific, more detailed observations as in the case of test procedures. Send copies to Malcolm Pirnie at appropriate intervals.

2.8.3    Record names, addresses and telephone numbers of all Contractors, subcontractors and major suppliers of materials and equipment.

2.9      *Reports*:

2.9.1    Furnish reports at appropriate intervals to Malcolm Pirnie concerning progress of the Work and of Contractor's compliance with the progress schedule and schedule of Shop Drawing and sample submittals.

2.9.2    Consult with Malcolm Pirnie in advance of scheduled major tests, inspections or start of important phases of the Work.

2.9.3    Draft proposed Change Orders, obtaining supporting information from Contractor, and recommend to Malcolm Pirnie.

2.9.4    Report any accidents or unusual incidents to Malcolm Pirnie and Client immediately upon occurrence.

2.10     *Payment Requests*: Review Contractor's applications for payment for compliance with the requirements of the Contract Documents and forward with Resident's recommendations to Malcolm Pirnie. The Resident will note the relationship of the payment requested to the schedule of values, Work completed, and materials and equipment delivered at the site but not incorporated in the Work.

2.11     *Certificates, Maintenance and Operation Manuals*: During the course of the Work, verify that certificates, maintenance and operation manuals and other data required to be furnished by Contractor are appropriate to the items actually installed and in accordance with the Contract Documents. The Resident will have this material delivered to Malcolm Pirnie for review and forwarded to Client prior to final payment for the Work.

2.12     *Completion*:

Version: Nov 2005
C:\Documents and Settings\carla\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc

Final Malcolm Pirnie Contract.doc



**SCWA-20339**



2.12.1   Before Malcolm Pirnie issues a Certificate of Substantial Completion, submit to Contractor a list of observed items requiring completion or correction.

2.12.2   Determine whether necessary inspections and approvals by public agencies having jurisdiction over the Work have been performed and advise Malcolm Pirnie accordingly.

2.12.3   Conduct a final inspection of the Work in the company of Malcolm Pirnie, Client, and Contractor and prepare a final list of items to be completed or corrected.

2.12.4   Verify that all items on final list have been completed or corrected and make recommendations to Malcolm Pirnie concerning acceptance of the Work.

**3. Limitations of Authority.** The Resident:

3.1   Shall not authorize any deviation from the Contract Documents or substitution of materials or equipment unless authorized by Malcolm Pirnie.

3.2   Shall not exceed limitations of Malcolm Pirnie's authority as set forth in this Agreement or the Contract Documents.

3.3   Shall not undertake any of the responsibilities of Contractor, subcontractors or Contractor's superintendent.

3.4   Shall not advise on, issue directions relative to, or assume control over any aspect of the means, methods, techniques, sequences or procedures of construction unless such advice or directions are specifically required by the Contract Documents.

3.5   Shall not advise on, issue directions regarding or assume control over safety precautions and programs in connection with the Work.

3.6   Shall not accept Shop Drawings or sample submittals from anyone other than Contractor.

3.7   Shall not authorize Client to occupy the Project in whole or in part.

3.8   Shall not participate in specialized field or laboratory tests or inspections conducted by others except as specifically authorized by Malcolm Pirnie.



Version: Nov 2005
C:\Documents and Settings\ecrin\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc

Final Malcolm Pirnie Contract.doc

**SCWA-20340**

Between Saratoga County Water Authority and Malcolm Pirnie, Inc.                         Project Number: 6075001

## Exhibit E

1.     <u>Piles/Intake Screens</u>.      In order to prevent debris and sediment accumulating behind the piles, Malcolm Pirnie ("MP") will issue a request for change order to eliminate the row of piles and place a single pile ahead of the lead screen.

2.     <u>Intakes</u>.  So as to provide for the cleaning of the intake pipe, MP will issue a request for change order to put a tee and riser pipes in to allow for cleaning the pipe.

3.     <u>Water Plant Low Flow Limitations</u>.  MP shall provide a report within forty-five days of execution detailing the low flow plant capabilities of the current plant design.

4.     <u>Security Improvements</u>.  In order to provide for the entire Water Plant site to be secured behind gates and to cover an open chamber next to the Membrane Building, MP will issue a request for change order for a cover for the chamber and move to one access gate closer to Butler Road.

5.     <u>Water Treatment Process</u>.  MP will prepare a contingency plan to add granular activated carbon filters to address potential non-compliance with the maximum contaminant level for total trihalomethanes.

6.     <u>Storage</u>.  MP shall modify the design of the High Lift Pump Station to allow SCWA to maintain pressure on the northern segment of the transmission system in the event that we have to make a transmission main repair.  This will include an additional Plant Water Pump, variable speed drives for the Plant Water Pumps, pressure controls, and changes to the plant water system piping.  By maintaining pressure on the northern segment using the High Lift Pump Station, more of the 5 million gallons in the tank at LFTC will be useable in the event of a transmission main repair.

7.     <u>Storage</u>.  Implementing the design changes in 6 will make the one million gallons in the Water Plant clearwell available for the northern segment of the transmission system in the event that we have to make a transmission main repair.

8.     <u>Storage</u>.  MP shall design pressure transmitters and radio telemetry to allow the Authority to monitor pressure at two critical high points.

9.     <u>Controls</u>.  MP shall design tank telemetry for operation of the high lift pumps based upon the water level in the tank.

10.    <u>Filing and Testing Pipeline</u>.  In order to obtain water to fill and test the pipeline and to maintain pressure and chlorine residual until plant startup, the Authority shall temporarily purchase water for said purposes.

11.    <u>Pipe In Wetlands</u>.  MP will implement field changes so that none of the transmission main is inaccessible in flooded areas.

12.    <u>Sampling Stations</u>.  MP shall design sampling stations to be added at each air valve, allowing the Authority to sample and to check for air without confined space entry in the air valve vault.

13.    <u>Connection Details</u>.  MP will document compliance for each hydrant and tee installed or to be installed.  This is to ensure that the design details for the hydrant and tees are in accordance with manufacturers recommendations for welded outlet connections.

14.    <u>Access To Air Valves and Isolation Valves</u>.  MP will assist in the process of changing temporary to permanent easements to allow vehicles to access air valves and isolation valves.

15.    <u>Air Valve Servicing</u>.  MP will provide purchase specifications for portable lifting equipment that will be needed to disassemble and move components safely within the vault.

16.    <u>Air Valve</u>.  A decision was made during design to standardize the air valve size.  No further action is required.

17.    <u>Pressure Relief</u>.  MP shall formally deliver a memo in regard to the the surge analysis with forth five (45) days of execution.  This report will address the stability of the transmission main to withstand anticipated surges.



Between Saratoga County Water Authority and Malcolm Pirnie, Inc.                     Project Number: 6075001

18.    <u>Blow Offs</u>. MP shall within forty five (45) days provide a letter on use of fire pumper equipment to facilitate draining the transmission main.

19.    <u>Pipe Class and Thrust Restraint</u>. The adequacy of pipe class and thrust restraint will also be addressed in a memo regarding surge pressures in item 17.

20.    <u>Air/Vacuum Valves-Flooding</u>. MP will evaluate the conditions in the field and provide a design for sump pumps where needed, either using utility power if available or battery or water power if utility power is not available.

Version: Nov 2005
C:\Documents and Settings\ccrist\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc                                                    Final Malcolm Pirnie Contract.doc

SCWA-20342

Between Saratoga County Water Authority and Malcolm Pirnie, Inc.                    Project Number: 6075001

## Schedule F
## Equal Opportunity Employment

Except as otherwise provided, the following equal opportunity clause contained in Section 202 of Executive Order 11246 shall be included in each government contract.

During the performance of this contract, the CONSULTANT agrees as follows:

1.      The CONSULTANT will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The CONSULTANT will take affirmative action to ensure that applicants are employed, and employees are treated during employment, without regard to their race, color, religion, sex or national origin. Such action shall include, but not be limited to, the following: employment, upgrading, demotion, or transfer, recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The CONSULTANT agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting office setting forth the provisions of this non-discrimination clause.

2.      The CONSULTANT will, in all solicitations or advertisements for employees placed by or on behalf of the CONSULTANT, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex or national origin.

3.      The CONSULTANT will send each labor union or representation of workers with which he has a collective bargaining agreement or other contract or understanding, a notice to be provided by the Department's contracting officer, advising the labor union or worker's representative of the CONSULTANT'S commitments under Section 202 of Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

4.      The CONSULTANT will comply with all provisions of Executive Order 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

5.      The CONSULTANT will furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the Department and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

6.      In the event of the CONSULTANT'S non-compliance with the non-discrimination clauses of this AGREEMENT or with any such rules, regulations, or orders, this AGREEMENT many be canceled, terminated or suspended in whole or in part and the CONSULTANT may be declared ineligible for further government contracts in accordance with the procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965 or by rule, regulation, or order of the Secretary of Labor or as otherwise provided by law.

7.      The CONSULTANT will include the provisions of paragraph (1) through (7) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary Labor issued pursuant to Section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The CONSULTANT will take such action with respect to any subcontract or purchaser order as the Department may direct as a means of enforcing such provisions including sanctions for non-compliance: Provided, however, that in the event the CONSULTANT becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the Department, the CONSULTANT may request the United States to enter into such litigation to protect the interests of the United States.

**SCWA-20343**

J:\CMC\SARACO - 07216\MP Contract\Final Malcolm Pirnie Contract.doc

Version: Nov 2005
C:\Documents and Settings\ccrisit\Local Settings\Temporary Internet Files\OLK19\Final Malcolm Pirnie Contract.doc

Final Malcolm Pirnie Contract.doc

SCWA-20344

 

**SUMMARY OF STANDARD CHARGES**

This document describes the basis for compensation and terms of payment. All rates presented apply to services rendered during calendar year 2008 and are subject to adjustment on January 1 of each subsequent year.

In addition to these fees, clients will also be responsible for any sales or value-added taxes that may apply to engineering services performed.

**1. Hourly Rates**

Charges for services provided will be in accordance with the following schedule:

| Classification | Hourly/Rate |
|---|---|
| Administrative 1 | $45/Hour |
| Administrative 2 | 51 |
| Administrative 3 | 61 |
| Administrative 4 | 69 |
| Administrative 5 | 84 |
| Technician 1 | 50 |
| Technician 2 | 56 |
| Technician 3 | 67 |
| Technician 4 | 78 |
| Technician 5 | 85 |
| Technician 6 | 90 |
| Engineer/Scientist/Architect 1 | 77 |
| Engineer/Scientist/Architect 2 | 83 |
| Engineer/Scientist/Architect 3 | 96 |
| Project Engineer/Scientist/Architect 4 | 106 |
| Project Engineer/Scientist/Architect 5 | 122 |
| Senior Project Engineer/Scientist/Architect 6 | 140 |
| Associate | 161 |
| Senior Associate | 181 |
| Officer | 193 |

Overtime - No overtime premium is charged for project work outside of normal working hours.

**2. Other Direct Costs**

All expenses incurred for a project, except in-house services specified below, from outside vendors will be invoiced at cost plus 10% to cover administrative expenses. These items may include, but are not limited to: shipping charges; printing; supplies; equipment; traveling expenses; special insurance; licenses; permits; or subcontractors.

**In-house services consist of:**

- Transportation $0.56/mile for vehicles

- Laboratory Unit prices for sample testing, handling and storage are available for individual assignments.

- Equipment A schedule of usage rates for specialty equipment is available for field assignments.

**3. Payment**

All invoices are due and payable within 30 days of billing date. Any attorney's fees, court costs, or other related expenses incurred in collecting delinquent accounts shall be paid by the client. Delinquent bills are subject to finance charges of 1.5% per month.

*Confidential Business Information*

C:\Documents and Settings\loewen\Local Settings\Temporary Internet Files\OLKDE\RATES 2008.doc

*SARATOGA WATER AUTHORITY*

**SCWA-20345**